**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO. FSD 115 OF 2019 (RPJ)**

**IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)**

**AND IN THE MATTER OF EHI CAR SERVICES LIMITED**

------

**DIRECTIONS ORDER**

------

**UPON** the Summons for Directions of the Petitioner (the "**Company**") dated 24 June 2019

**AND UPON** reading the First Affidavit of Won Cheoi Shin dated 12 December 2019, the First Affidavit of Daniel Ryan dated 12 December 2019, the First Affirmation of Xiaomeng Wang dated 14 January 2020 and the Second Affidavit of Michele Berry dated 13 January 2020, and the exhibits thereto

**AND UPON** hearing Counsel for the Company, Leading Counsel for the Walkers Dissenters, Leading Counsel for the Collas Crill Dissenters, Leading Counsel for the Ogier Dissenters and Counsel for the Campbells' Dissenter

**IT IS HEREBY ORDERED THAT**:

1.  The dissenting shareholders listed in **Appendix 1** to this Summons (together, the "**Dissenters**" and each a "**Dissenter**") be joined as Respondents to the Petition.

**A.    Appointment of Experts**

2.  The Company and the Dissenters shall have leave to instruct and call as a witness at trial one expert witness each (any actively participating Dissenters to jointly and severally instruct one expert between them) in the field of valuation (together, the "**Experts**") in order to opine upon the fair value of the Dissenters' shares in the Company, as a going concern as at 8 April 2019 (the "**Valuation Date**").

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

3. The Experts shall be appointed by no later than 30 days from the date of this Order, and on that date the Company and the Dissenters shall each advise the other in writing of the identities and email addresses of the respective Experts so appointed.

4. The Company and the Dissenters shall have leave to instruct and call, at a hearing following the Court's determination of fair value (the "**Interest Hearing**"), one expert witness each (any actively participating Dissenters jointly and severally to instruct one expert between them) to opine on the fair rate of interest for the purposes of section 238(11) of the Companies Law (2018 Revision) (together, the "**Interest Experts**").  For the avoidance of doubt, the same individual may be instructed and called as both a Valuation Expert and an Interest Expert.  If the Company and the Dissenters, or either of them, consider an Interest Hearing necessary, the Interest Experts shall be appointed within 21 days of the date of the Order made upon the Court's determination of fair value of the Dissenters' shares in the Company, and on that date the Company and the Dissenters shall each advise the other in writing of the identities and contact details including email addresses of the respective Interest Experts so appointed. Absent agreement between the parties at that time, and notwithstanding the provisions of any other direction herein, any party shall have liberty to apply for further directions regarding the exchange of reports and supplemental reports from, and production of a joint memorandum by, the Interest Experts, and in relation to any other matters connected with determining the fair rate of interest.

## B.   Confidentiality and Non-Disclosure Agreement

5. No Expert or Expert's Appointee (being each person whom an Expert appoints to assist him/her in any work relating to the Proceedings, including the preparation of the Expert Reports and the Joint Memorandum (as defined in this Order) and any other preparations in relation to the Proceedings) (each an "**Appointee**" and collectively the "**Appointees**"), nor any Dissenters (including their agents, advisors, sub-advisors, representatives and consultants, collectively their "**Representatives**"), shall be given access to the Data Room (as defined below) until and unless each Dissenter and Expert enters into, and exchanges, a Confidentiality and Non-Disclosure Agreement in the same or substantially similar form attached to this Order as **Appendix 2**.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

2

**C.    Electronic Data Room and Company Disclosure Procedure**

6.    Within 14 days from the date of this Order, the Company shall open an electronic data room (the "**Data Room**") and, subject to paragraph 5 above, provide access to the Experts, the Appointees, the Dissenters, and their respective Representatives and Cayman Islands attorneys.

7.    At the same time as the Data Room is opened, the Company will upload to the Data Room the folders of documents identified in the Index at **Appendix 3** of this Order that comprise the entirety of the documents that were made available by the Company to members of the Buyer Group via a transaction due diligence data room utilised in the merger transaction negotiations (the "**Transaction Due Diligence Documents**").

8.    Within 120 days from the date of this Order, the Company shall upload to the Data Room:

8.1.    All documents (of whatsoever description, whether electronic, hard copy or in any other format) and communications (whether by email or otherwise) and other materials which are in its possession, custody or power comprising the categories of documents identified at **Appendix 4** of this Order which were prepared or created in the five year period ending on the Valuation Date and which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at the Valuation Date; and

8.2.    All additional documents (of whatsoever description, whether electronic, hard copy or in any other format) and communications (whether by email or otherwise) in its possession, custody or power which are relevant to the determination of the fair value of the Dissenters' shares in the Company, as at the Valuation Date and which were prepared or created in the five year period ending on the Valuation Date.

9.    All documents uploaded to the Data Room shall be uploaded in their native format; de-duplicated; without watermarking (save where the document in its native form has watermarking); and shall be named with a unique identification (Bates) number, with all functionality, such as formulae and computations intact and enabled except those documents that require redaction on the basis that (a) they contain privileged or without prejudice information, or (b) it is required for compliance with Chinese laws and regulations, including, but not limited to, the Cybersecurity Law of the People's Republic of China.  If documents were

password protected in their native form, passwords will be provided.   Upon request, the Company shall give reasons for a specific redaction.   In relation to documents redacted pursuant to paragraph 9(a), upon request, the document shall be provided in its native format manually amended by way of deletion of redacted information.   Subject to any relevant protocols being agreed by the parties, in relation to documents redacted pursuant to paragraph 9(b), upon request, the Company shall make any document available in an un-redacted form for electronic inspection by the parties' Representatives, Experts and/or Appointee within the People's Republic of China provided that such inspection is not in breach of Chinese laws and regulations, including but not limited to the Cybersecurity Law of the People's Republic of China.  All parties who have been given access to the Data Room shall, insofar as it is within the technical functionality of the Data Room platform, have full access rights to the documents therein, save that no party will have the ability to modify documents in-situ within the Data Room; however, documents shall be in a form which the Dissenters can download either individually or (upon request to, and facilitated by, the Data Room service provider) as a bulk download and, in turn, modify outside of the Data Room.

10.   Any document uploaded to the Data Room that is an electronic image of a hard copy document containing text, shall be uploaded to the Data Room in a searchable format using optical character recognition.

11.   The costs associated with the establishment and maintenance of the Data Room, including the Data Room provider's costs of (i) uploading, processing and hosting the documents added to the Data Room, (ii) producing the Data Room Index (as defined below) and any updated versions thereof, and (iii) Representatives seeking access to the Data Room, shall be borne initially by the Company on an ongoing basis but shall ultimately be costs in the proceedings.

12.   The Company shall, on an ongoing basis whilst the proceedings are extant, bear the costs of six access codes per Dissenter group (i.e. six in total to each group of Dissenters represented by a single Cayman Islands law firm), and as many access codes as the Experts may require, to facilitate access to the Data Room (such costs ultimately to be costs in the proceedings). Should any Dissenter and/or its Representative(s) require additional access to the Data Room, such Dissenter shall bear the specific costs of such access, and the Company will arrange for such costs to be charged by the Data Room provider to the Dissenter directly.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

4

13. No Data Room usage reports or any other analysis shall be run by any party on the usage of another party, its advisors or consultants, or its appointed Expert and his/her Appointees without the written consent of that party.

**D.   Lists of Documents; Translations**

14. The Company will ensure that the documents it uploads to the Data Room pursuant to paragraph 8 above will be appropriately indexed in an electronically searchable form (the "**Data Room Index**").  The index shall be compiled in a manner which complies with the requirements for lists in GCR O.24, r.5(1).  This index shall be updated contemporaneously with any documents being added to the Data Room by the Company.  Any changes in the content of the Data Room shall be clearly identified to the Respondents at the same time they are made.

15. In relation to the documents which are to be disclosed pursuant to this Order, the Company shall, on or before the date for compliance with paragraph 8 above, and from time to time thereafter as may be necessary, file and serve on the Dissenters a list of documents complying with GCR O.24, r.5.  The Data Room Index shall be treated as the Company's index of documents in accordance with GCR O.24, r.5(1) and any documents that may fall within GCR O.24, rr.5(2) to 5(4) shall be listed separately in accordance with Form No. 16 of Appendix 1 to the GCR.  Nothing in this Order or in Appendix 2 hereto shall derogate from each party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose.

16. Where documents added to the Data Room are not in the English language and the Company has an English translation thereof, an electronic copy thereof shall be uploaded by the Company to the Data Room.  The English translation shall be uploaded to the Data Room together with the source document, which shall be cross-referenced and/or linked to the translation.

17. In the event that any party wishes to rely on a document which is not in the English language and a certified English translation is not available, that party shall procure and provide a certified English translation of the pages relied on at its own cost.  An electronic copy of the certified English translation shall be uploaded to the Data Room as soon as practicable in

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

5

accordance with paragraph 16 above, and following the exchange of the Expert Reports in accordance with paragraph 37 below.

**E.   Experts' Information Requests of the Company**

18. Unless the Court otherwise orders, the Company shall upload to the Data Room any additional documents (of whatsoever description, whether electronic, hard copy or in any other format), and communications (whether by email, or otherwise) and any other materials prepared or created for this purpose which are or have been in its possession, custody or power or information requested by any Expert for the purpose of preparing his/her own opinion ("**Information Requests**").  For the avoidance of doubt, if an Expert so requests, this may include documents, communications, materials or information produced after the Valuation Date.  Such requests may be made from the date of the upload of documents to the Data Room pursuant to paragraph 8 above.  Any Information Requests from an Expert and any responses from the Company thereto shall be copied simultaneously by email to the Expert for the other party or parties to the email addresses notified in accordance with paragraph 3 above.

19. The Experts' Information Requests shall be made periodically and the Experts shall use their best endeavours to submit only concise and clear questions that are reasonably required to assist in the formulation of valuation opinions.

20. The Company shall provide written answers to each batch of Information Requests and shall upload the written answers and any other responsive documents to the Data Room as soon as practicable, and in any event (unless otherwise agreed): (a) with respect to the first Information Request made of the Company, within 35 days of receipt of that first request; and (b) with respect to any further Information Request, within 21 days of receipt of that further request. For the avoidance of doubt, should the Information Request be received by the Company after 5.30pm (Cayman Islands time), the timeframes in (a) and (b) above shall begin to run from 8.30am (Cayman Islands time) the following business day.

21. Unless otherwise agreed, the cut-off date for the submission of the final Information Request to the Company is 28 days before the date fixed for the exchange of Expert Reports (as provided for at paragraph 37.3 below).

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

6

**F.    Management Meetings**

22.    Within 21 days of a request by either of the Experts unless otherwise agreed or directed by the court, the Company shall procure that appropriate members of its management team be available to meet with both Experts simultaneously for the purpose of providing information and answering queries which are relevant to the preparation of the Experts' respective Expert Reports (a "**Management Meeting**").

23.    The number of Management Meetings requested by the Experts shall not be restricted, save that that no Management Meetings may be requested by either of the Experts within 56 days of the Expert Reports being due to be exchanged, unless otherwise agreed between the parties or directed by order of the Court.

24.    The parties shall agree on the time and date, format (telephone conference, video conference or in person), and (if applicable) location for a Management Meeting.

25.    If agreement cannot be reached as to the time or date, format, and/or location of a Management Meeting, either party may apply to the Court for directions on not less than 5 working days' notice to the other parties, such matter to be resolved by the Court on the papers unless the Court otherwise orders.

26.    Management Meetings shall be conducted in English.  If necessary to facilitate efficient and effective participation by any member of the Company's management team, the Company shall arrange for interpreters to be present at Management Meetings.  The costs of any interpreter shall be borne equally by the Company and the Dissenters (to be shared between them on a *pro rata* basis by reference to the number of shares they each held in the Company) and any such costs shall be costs in the proceedings.

27.    Only members of the Company's management team, the parties' Cayman Islands legal advisers, the Experts (together with the Expert's team members) and any interpreters (if applicable) shall attend Management Meetings, save that any Management Meetings held by telephone conference may also be attended by representatives of the Dissenters in an observatory capacity.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

7

28.   Each party shall be responsible for its own travel, visa, accommodation and other logistical arrangements, and those of its Expert, in relation to Management Meetings and the costs thereof shall be costs in the proceedings.

29.   Each Expert shall provide a list of questions and/or topics ("**List of Questions and Topics**") to the Company not less than 14 days prior to the agreed date for a Management Meeting.   The List of Questions and Topics shall be copied by email to the Expert for the other party or parties at such time as it is sent to the Company.   Either Expert may ask reasonable follow-up questions at a Management Meeting to the extent that they consider it necessary.   If an Expert reasonably wishes to raise a new question or topic not included in the List of Questions and Topics, reasonable accommodation shall be made by the Company and agreement to provide a response shall not be unreasonably withheld.

30.   The Company shall arrange for Management Meetings to be recorded and a transcript prepared.   Both the recording and the transcript shall be circulated to the parties and uploaded to the Data Room as soon as reasonably practicable thereafter.   The cost of such recording and transcript shall be borne equally by the Company and the Dissenters (to be shared between them on a *pro rata* basis by reference to the number of shares each held in the Company).   Such costs shall be costs in the proceedings. Within 14 days of its receipt of a transcript of a particular Management Meeting, the Company shall be permitted to consider whether there are any errors in the transcript and, if so, explain any such errors to the Dissenters and produce (or, if already produced and uploaded to the Data Room, identify) the supporting documents which demonstrate any such error.   Within 7 days of providing notice of any purported errors and supporting documents, the Company shall circulate to the Dissenters and upload to the Data Room a copy of the transcript which identifies (a) any amendments agreed between the parties, and (b) any statements which the Company maintains are erroneous but which the parties have not agreed should be amended and the supporting documentation relied upon by the Company in support of its position.

31.   To the extent he considers it appropriate to do so, an Expert may refer to information provided in a Management Meeting in his Report, the Joint Memorandum and/or Supplemental Report.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

8

## G.   Dissenter Disclosure

32.   Subject to the Company entering into, and exchanging, a non-disclosure agreement in the same or substantially similar form as that contained in Appendix 2, with the Dissenter as a disclosing party and the Company as the recipient, each Dissenter shall, in accordance with paragraph 34 below, upload to the Data Room within 120 days of the date of this Order documents falling within the categories of documents identified at Appendix 5 of this Order which were prepared and created in the period from 27 November 2016 to the Valuation Date and which are relevant to the determination of the fair value of the shares in the Company as at the Valuation Date.

33.   Each Dissenter shall, within 120 days of the date of this Order, file and serve upon the Petitioner a list of documents describing the documents to be provided under paragraph 32 above and the Schedule hereto which are in the Dissenter's possession, custody or power. The list of documents shall be treated as a list of documents in accordance with GCR O.24, r.5(1) and any documents that may fall within GCR O.24, rr.5(2) to 5(4) shall be listed separately in accordance with Form No. 16 of Appendix 1 to the GCR.  Nothing in this Order or in Appendix 5 hereto shall derogate from each party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose.

34.   Each Dissenter shall upload the documents disclosed pursuant to paragraph 32 above to the Data Room (or, if confidentiality, control or financial terms cannot be agreed with the Company's Data Room provider, by way of an alternative data room).  The costs of hosting such documents in the Data Room (but not in an alternative data room, which costs shall be borne initially by the Dissenters on an ongoing basis, but shall ultimately be costs in the proceedings) shall be borne initially by the Company on an ongoing basis but shall ultimately be costs in the proceedings, and paragraphs 9 to 17 above shall apply in the same manner, and with the necessary modifications to give effect to those paragraphs, to the Dissenters' upload of documents to the Data Room.  The Respondents shall not be given access to each other's documents, but the Experts and the Company shall have access to all documents contained in the Data Room.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

9

**H.    Factual Affidavits**

35.   The Company shall file and serve any factual evidence by no later than a date 134 days from the date of this Order.  The Dissenters shall file any evidence in response by no later than 21 days of service of the Company's factual evidence upon them.  The Company shall file any evidence in reply by no later than 14 days of service of the Dissenters' evidence upon it.

36.   Any factual evidence to be relied upon at the hearing of the Petition shall be given by affidavit and leave is hereby granted to the parties to cross-examine any deponent of any factual affidavit and the deponent(s) of any such affidavit(s) shall attend for cross-examination on the condition that notice requiring their attendance is given 14 days before the CMC (as defined below) or, if the CMC is dispensed with or the date of the CMC is fixed less than 14 days prior to the hearing of the CMC then the deadline shall be eight weeks prior to trial.

**I.    Expert Reports and Joint Memorandum**

37.   Signed reports of each of the Experts (the "**Expert Reports**"):

37.1.   Shall be confined to the issue of the fair value of the Dissenters' shares as a going concern in the Company as at the Valuation Date;

37.2.   Shall be in accordance with the Rules for Expert Witnesses in the FSD Guide; and

37.3.   Shall be exchanged simultaneously 20 weeks after the date on which documents are uploaded to the Data Room pursuant to paragraph 8 above (i.e., on 4 November 2020), unless otherwise agreed by all parties.

38.   The Experts shall meet at a mutually convenient time, whether in person, by telephone, conference call or video link or howsoever they shall decide (the "**Experts' Meeting**"), but no later than 21 days after the exchange of the Expert Reports, to discuss the differences between their respective Reports with a view to narrowing the issues between them and producing the Joint Memorandum required by paragraph 39 below.

39.   A joint memorandum of the Experts (the "**Joint Memorandum**") recording:

39.1.   The fact that they have met;

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

10

39.2.   When and where they met, and that they discussed the Expert issues;

39.3.   The issues on which they agree;

39.4.   The issues on which they disagree; and

39.5.   A brief summary of the reasons for any such disagreement,

shall be completed and issued to the parties by the Experts by no later than 21 days following the Experts' Meeting.

40.   Any supplemental Expert Reports (**"Supplemental Reports"**) shall be exchanged simultaneously by no later than 42 days following the issuance of the Joint Memorandum.

41.   The Company and the Dissenters shall each be at liberty to call as expert witnesses at trial their own appointed Expert whose report(s) have been exchanged pursuant to the provisions of this Order.

42.   The Company shall be at liberty to cross-examine the Dissenters' appointed Expert on his or her report(s) at trial, and the Dissenters shall be at liberty to cross-examine the Company's appointed Expert on his or her report(s) at trial.

**J.    Case Management, Case Management Conference and Trial Dates**

43.   Any party that seeks foreign ancillary relief in aid of these proceedings, whether by way of third party discovery applications, applications in the United States of America under 28 U.S.C. s.1782, or otherwise, shall, as soon as practicable after bringing any such application, notify this Court, and the other parties to the proceedings, of the applications forthwith so that the Court can ensure that any foreign ancillary relief can be accommodated in the timetable of these proceedings.

44.   Unless the parties otherwise agree, a Case Management Conference (**"CMC"**) shall be held on the earliest date convenient to the Court and the parties' Counsel after the deadline for exchange of any Supplemental Reports, or in the event that no Supplemental Reports are exchanged, on the earliest convenient date once it is confirmed that no Supplemental Reports

will be exchanged.  The parties may agree that the CMC be dispensed with provided that the Court does not indicate a CMC is necessary.

45.   The Dissenters shall pay 50% of the cost of the recording and transcription of the hearing of the Company's Summons for Directions, the CMC and the hearing of the Company's Petition, subject to the parties agreeing on the supplier and fee quote prior to the hearing.  Such costs shall be shared between the Dissenters on a pro rata basis by reference to the number of shares they each held in the Company.   The Dissenters shall be included on all correspondence between the Company and the supplier.

46.   For convenience only, the deadlines set out in various paragraphs in this Order are tabulated in a schedule attached to this Order as **Appendix 6**.  To the extent there is any inconsistency between the terms of this Order and Appendix 6, this Order shall prevail.

47.   Save as varied by this order or further order, the practice and procedures set out in the FSD Guide are to be followed.

48.   The parties do exchange and file written submissions on the costs of and occasioned by the Summons for Directions, subject to paragraph 45 above, with the timetable therefor to be agreed as between the parties or ordered by the Court.

49.   Liberty for any party to apply for further directions in respect of the matters addressed in this Order and any other matters prior to the CMC.

50.   The trial be fixed with a provisional estimate of 13 days (with up to a two week break between the completion of evidence and closing submissions) at least eight weeks after the exchange of Supplemental Reports and subject to the Company's and Dissenters' Counsels' availability.



This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

12

51. Within five days of the filing of this Order, the Company shall inform the Dissenters of the total number of shares that shall be the subject of the trial of the Petition, and shall inform the Dissenters of any change within three days of such change.


Dated this 18th day of February 2020

Filed this 23rd day of March 2020

**The Honourable Justice Raj Parker**

**JUDGE OF THE GRAND COURT**

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

13

**APPROVED AS TO FORM AND CONTENT**

**MAPLES AND CALDER**
Attorneys for the Company

**WALKERS**
Attorneys for the Dissenters (numbered 8, 19, 20 and 25 in Appendix 1)

**OGIER**
Attorneys for the Dissenters (numbered 3, 4, 6, 7, 14, 17, 18, 23 and 24 in Appendix 1)

**COLLAS CRILL**
Attorneys for the Dissenters (numbered 9, 10, 11, 12, 13, 16, 21, 22 and 26 in Appendix 1)

**CAMPBELLS**
Attorneys for the Dissenter (numbered 5 in Appendix 1)

**LOEB SMITH**
Attorneys for the Dissenter (numbered 15 in Appendix 1)

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

14

Appendix 1
List of Dissenters

| S/n | Name of Dissenter |
|-----|-------------------|
| 1 | Amethyst Arbitrage Fund |
| 2 | Amethyst Arbitrage International Master Fund (formerly Amethyst Arbitrage Trading Ltd. until to 29 March 2019 |
| 3 | Athos Special Situations Fund SPC for and on behalf of Athos Global Opportunities SP 1 |
| 4 | Athos Asia Event Driven Master Fund |
| 5 | ATRS/FP Private Equity Fund, L.P. |
| 6 | BCIM Strategic Value Master Fund, LP |
| 7 | BCIM SV SMA I, LLC |
| 8 | Blackwell Partners LLC - Series A |
| 9 | Corbin ERISA Opportunity Fund, Ltd. |
| 10 | Corbin Opportunity Fund, LP |
| 11 | Corsun LLP |
| 12 | FourWorld Event Opportunities, LP |
| 13 | FourWorld Special Opportunities Fund, LLC |
| 14 | FMAP ACL Limited |
| 15 | Heng Ren Silk Road Investments LLC |
| 16 | Kevin Xin Lu |
| 17 | Lamma Fund |
| 18 | Lantau Fund |
| 19 | Maso Capital Arbitrage Fund Limited |
| 20 | Maso Capital Investments Limited |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

15

| 21 | Pergo Company Limited |
| 22 | Pinehurst Partners, L.P. |
| 23 | Senrigan Master Fund |
| 24 | SHCP Fair Value Investors III, LLC |
| 25 | Star V Partners LLC |
| 26 | Yagnesh Dinesh Patel |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

16

**Appendix 2**
**Confidentiality and Non-Disclosure Agreement**

This Confidentiality and Non-Disclosure Agreement (the "**Agreement**"), effective [Date] (the "**Effective Date**"), is entered into

**BETWEEN**

**EHI CAR SERVICES LIMITED**, a company incorporated under the laws of the Cayman Islands and having its registered office address at c/o Maples Corporate Services Limited, PO Box 309, Ugland House, George Town, Grand Cayman KY1-1104, Cayman Islands (the "**Company**")

**AND**

[NAME], a company incorporated under the laws of [jurisdiction] and having its registered office address at [address] (the "**Recipient**"),

(each herein referred to individually as a "**Party**", and collectively as the "**Parties**").

**WHEREAS**

A.   On 18 February 2019, the Company entered into the Amended and Restated Agreement and Plan of Merger (as previously entered into on 6 April 2018) with Teamsport Parent Limited and Teamsport Bidco Limited (the "**Merger Sub**"), pursuant to which the Merger Sub merged with and into the Company (the "**Merger**").  The Merger received the approval of the requisite majority of the members of the Company at an extraordinary general meeting held on 8 April 2019.

B.   The dissenting shareholders of the Company identified in Appendix 1 of the Directions Order (as defined herein) (each a "**Dissenter**", and collectively the "**Dissenters**") have dissented from the Merger pursuant to Section 238(5) of the Cayman Islands Companies Law (2018 Revision).

C.   On 24 June 2019, the Company petitioned the Grand Court of the Cayman Islands to determine the fair value of the Dissenters' shares in Cause No. FSD 115 of 2019 (RPJ) (the "**Proceedings**").

D.   Pursuant to an order for directions in the Proceedings dated [date] (the "**Directions Order**"), the Company is to establish an electronic data room (the "**Data Room**") to which discovered documents are to be uploaded for the purposes of the Proceedings.

E.   The Company is engaged in proprietary and confidential business activities, and could be prejudiced if Confidential Information (as defined herein) pertaining to the Company or its business is disclosed publicly or to third parties, or used by the Recipient, its Representatives and/or Appointees (as defined herein) for purposes not reasonably related to the purposes of the Proceedings.

**NOW, THEREFORE**, in consideration of the promises and the mutual agreements and covenants hereinafter set forth, and intending to be legally bound, the Company and the Recipient hereby agree as follows:

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

17

**1      DEFINITIONS AND INTERPRETATION**

1.1     In this Agreement the following words and expressions shall have the following meanings:

(a)      "**Appointee**" means each person whom an Expert appoints to assist him/her in any work relating to the Proceedings, including the preparation of the Expert Reports and the Joint Memorandum (such other terms as defined in the Directions Order).

(b)      "**Representatives**" means, with respect to a Recipient, its agents, advisers, sub-advisers, representatives and consultants.

1.2     References to recitals and clauses are references to the recitals to and clauses of this Agreement.

1.3     Headings to clauses and the use of bold type are for convenience only and shall not affect the interpretation or construction of this Agreement.

1.4     Words in the singular include the plural and vice versa.

**2      CONFIDENTIAL INFORMATION**

2.1     "**Confidential Information**" means:

(a)      Any information disclosed by the Company to the Recipient, its Representatives and/or Appointees either directly or indirectly, in writing or orally, containing information related to: trade secrets; business, commercial, or financial information; financial statements; financial or business plans and strategies; projections or analyses for future or prior periods; tax data; business and marketing plans and strategies; assets and liabilities; proposed strategic transactions or acquisitions, strategic alternatives, or business combinations; or other personally or commercially sensitive or proprietary information of the Company and its subsidiaries; and

(b)      Any notes, analyses, compilations, studies, interpretations, documents or records containing, referring to, relating to, based upon or derived from, such Confidential Information, in whole or in part, created by the Recipient, its Representatives and/or Appointees.

2.2     Confidential Information shall not, however, include any information that:

(a)      Was publicly known or made generally available to the public without a duty of confidentiality prior to the time of disclosure to the Recipient by the Company;

(b)      Has become publicly known or made generally available to the public without a duty of confidentiality after disclosure to the Recipient by the Company through no action or inaction of the Recipient; or

(c)      Is in the rightful possession of the Recipient without confidentiality obligations at the time of disclosure by the Company to the Recipient as shown by the Recipient's then contemporaneous written files and records kept in the ordinary course of business.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

18

2.3     If the Recipient becomes compelled by applicable law to disclose any Confidential Information, the Recipient will, insofar as it is permitted to do so by applicable law, provide the Company with prompt written notice of such disclosure, and will provide such assistance to the Company as the Company may require in seeking a protective order or other appropriate remedy.

2.4     If the Company waives the Recipient's compliance with this Agreement or fails to obtain a protective order or other appropriate remedy, the Recipient will furnish only that portion of the Confidential Information that it is required to disclose by applicable law, provided that any Confidential Information so disclosed shall maintain its confidentiality protection for all purposes other than such disclosure compelled by applicable law.

## 3       MAINTENANCE OF CONFIDENTIALITY

3.1     Except as may otherwise be agreed in writing by the Company, all Confidential Information and its contents received by the Recipient, its Representatives and/or Appointees shall be:

(a)     Maintained as set forth in this Agreement;

(b)     Disclosed only to such persons and in such manner as permitted by this Agreement; and

(c)     Used solely for the purposes of the Proceedings.

3.2     Prior to its Representatives and/or Appointees being granted access to the Data Room and/or receiving the Confidential Information, the Recipient shall:

(a)     Ensure that its Representatives and Appointees expressly agree in writing to comply with the confidentiality terms imposed by this Agreement; and

(b)     Confirm in writing to the Company that the agreements in clause 3.2(a) above have been obtained.

3.3     The Recipient, its Representatives and its Appointees shall keep the Confidential Information confidential and shall not:

(a)     Disclose any Confidential Information or permit any Confidential Information to be disclosed, either directly or indirectly, to any third party without the Company's prior written consent; or

(b)     Use the Confidential Information for any purpose other than as set out at Clause 3.1 above or exploit the Confidential information in any way, including without limitation:

(i)     In any court proceedings commenced in any jurisdiction save for the Proceedings;

(ii)    In communications with any competitor or competitors of the Company or its subsidiaries or affiliates; and/or

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

19

(iii)  As a basis for trading in the securities of the Company or its subsidiaries or affiliates.

3.4   The Recipient shall take necessary measures to protect the confidentiality, and to avoid disclosure and unauthorised use, of Confidential Information.  Without limiting the foregoing, the Recipient shall take at least those same measures it employs to protect its own confidential information.

3.5   The Recipient shall reproduce the Company's proprietary rights notices on any copies of documents, in the same manner in which such notices were set forth in or on the original.

## 4      BREACH OF CONFIDENTIALITY

4.1   The Recipient shall notify the Company immediately of:

(a)  Any unauthorized use or disclosure, or suspected unauthorized use or disclosure, of Confidential Information by the Recipient, its Representatives and/or Appointees; and

(b)  Any actions by the Recipient, its Representatives and/or Appointees which are inconsistent with their respective obligations under this Agreement.

4.2   The Recipient shall cooperate with any and all efforts of the Company to help the Company regain possession of Confidential Information and/or prevent its further unauthorized use or dissemination.

4.3   The Recipient agrees to be responsible for any breach of this Agreement by any of its Representatives and/or Appointees that has received or obtained Confidential Information.

4.4   Nothing in this Agreement shall prejudice in any way the rights of the Company to file an application with the Cayman Islands court for a protective order relating to any Confidential Information.  For the avoidance of doubt, any failure by the Company to obtain such an order or other protection after having a reasonable opportunity to do so shall not preclude the Recipient from making use of the Confidential Information in the Proceedings.

## 5      DESTRUCTION OF MATERIALS

5.1   Upon the earlier of (i) the final determination of the Proceedings (including all appeals therefrom), or (ii) a legally binding agreement having been reached between the Company and any of the Dissenters as to the amount payable to them as a result of the Merger, and payment having been duly received by the Dissenter(s), the Recipient, provided it is no longer participating in the Proceedings, shall:

(a)  Promptly destroy any materials that are in writing or other tangible medium or permanently erase any materials that are in an electronic or other non-tangible medium (to the extent technologically feasible) that constitute Confidential Information obtained or possessed by the Recipient or any of its Representatives and/or Appointees (including, for the avoidance of doubt, all of the Recipient's, its Representatives' and/or Appointees' notes, summaries, analyses, memoranda,

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

20

records (electronic or otherwise), excerpts or other derivative work product), with proof of such destruction as the Company may reasonably request; and

(b)     Certify in writing to the Company that the Recipient has complied with the requirements of this Clause 5.

5.2     Notwithstanding the foregoing, one copy of the Confidential Information may be retained by the Recipient's legal department or outside attorneys to comply with applicable law or regulation, provided that copies so retained shall continue to be treated as confidential in accordance with the provisions of this Agreement.

5.3     Notwithstanding the destruction or erasure of Confidential Information pursuant to this Clause 5, the Recipient and its Representatives shall continue to be bound by their confidentiality obligations and other obligations under this Agreement.

## 6     INDEMNITY

The Recipient shall indemnify the Company against all liabilities, costs, expenses, damages and losses (including but not limited to any direct, indirect or consequential losses, loss of profit, loss of reputation and all interest, penalties and legal costs (calculated on a full indemnity basis) and all other professional costs and expenses) suffered or incurred by the Company arising out of or in connection with any breach of this Agreement by the Recipient, its Representatives and/or Appointees.

## 7     INADEQUACY OF DAMAGES

The Recipient agrees that any violation of this Agreement may cause irreparable injury to the Company which cannot be adequately remedied in monetary terms or other damages, and accordingly the Company may be entitled to obtain injunctive relief, specific performance and/or any other equitable relief in addition to all other legal remedies concerning any threatened or actual breach of any of the provisions of this Agreement.

## 8     TERM

8.1     The obligations of the Recipient under this Agreement shall survive until 24 months following the destruction of materials pursuant to Clause 5 above.  Notwithstanding the foregoing, the Recipient's duty to hold in confidence any Confidential Information that was disclosed by the Company during the term of this Agreement shall remain in effect for five years.

8.2     The termination of this Agreement shall not affect any accrued rights or remedies to which the Company is entitled.

## 9     NO WARRANTY

THE COMPANY MAKES NO WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, WITH RESPECT TO NON-INFRINGEMENT OR OTHER VIOLATION OF ANY INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY OR OF THE RECIPIENT.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

21

**10   NO LICENSE**

This Agreement shall not be construed as creating, conveying, transferring, granting or conferring upon the Recipient any rights, license or authority in or to the Confidential Information except as expressly set forth in this Agreement.   Title to the Confidential Information will vest solely with the Company.

**11   MISCELLANEOUS**

11.1   This Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns; except that the Recipient may not assign or otherwise transfer this Agreement, by operation of law or otherwise, without written consent of the Company.  Any assignment or transfer of this Agreement in violation of the foregoing shall be null and void.  The Recipient hereby represents and warrants that the person executing this Agreement on its behalf has express authority to do so, and, in so doing, to bind the Party thereto.

11.2   This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior written and oral agreements between the Parties regarding such subject matter.

11.3   If any provision herein shall be determined to be void or unenforceable in whole or in part for any reason whatsoever such invalidity or unenforceability shall not affect the remaining provisions or any part thereof contained within this Agreement and such void or unenforceable provisions shall be deemed to be severable from any other provision or part thereof herein contained.

11.4   No provision of this Agreement may be waived except by a written instrument executed by the Party against whom the waiver is to be effective.   A Party's failure to enforce any provision of this Agreement shall neither be construed as a waiver of the provision nor prevent the Party from enforcing any other provisions of this Agreement.  No provision of this Agreement may be amended or otherwise modified except by a written instrument signed by the Parties to this Agreement.

11.5   The Parties may execute this Agreement in one or more counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement.  This Agreement may be delivered by email or facsimile transmission, and email or facsimile copies of executed signature pages shall be binding as originals.

**12   GOVERNING LAW AND JURISDICTION**

12.1   This Agreement and any dispute, claim, suit, action or proceeding of whatever nature (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the laws of the Cayman Islands.

12.2   Each Party irrevocably agrees to submit to the exclusive jurisdiction of the courts of the Cayman Islands over any claim or matter arising under or in connection with this Agreement or the legal relationship established by this Agreement; provided that nothing in this Clause

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

22

12 shall prevent a Party from seeking interlocutory or interim injunctive relief in other jurisdictions.

12.3   Each Party irrevocably agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

**IN WITNESS WHEREOF**, the Parties acknowledge that they have read and understood this Agreement and have executed this Agreement as of the Effective Date.

Signed for and on behalf of )
**EHI CAR SERVICES LIMITED** )
by its duly authorised agent )
)                                        _____
)                                        Name:
)                                        Designation:
In the presence of: )                    Date:
)
)
)
_____ )
Name:
Date:

Signed for and on behalf of )
**[NAME OF RECIPIENT]** )
)                                        _____
)                                        Name:
)                                        Designation:
)                                        Date:
In the presence of: )
)
)
_____ )
Name:
Date:

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

23

### Appendix 3

### Categories of documents to be disclosed pursuant to paragraph 7 of the Order

| Document | Tab |
|---|---|
| **I.     BUSINESS OVERVIEW** | |
| **Car Rental Market** | I-A |
| **General Company Data** | I-B |
| *Company Presentations* | |
| *Corporate Structure* | |
| *Organization Chart* | |
| *Bank Analyst Reports* | |
| *Company Annual & Quarterly Reports* | |
| **II.     BUSINESS OPERATIONS** | |
| **B2B Operational Data** | II-A |
| *B2B car service client segments* | |
| *B2B core client list and revenue contribution from different sub-units* | |
| **B2C Operational Data** | II-B |
| *Average car rental period statistics* | |
| *Marketing & Pricing* | |
| *New initiatives* | |
| *Store list (2016 & 2017)* | |
| **Business contracts examples** | II-C |
| **SQI reports examples** | II-D |
| **III.     FINANCE AND TAXATION** | |
| **Finance** | III-A |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

| | |
|---|---|
| *2017 Q1-Q2 Order Details [Null]* | |
| *Historical Breakdown Model* | |
| **Taxation [Null]** | III-B |
| **IV.     LEGAL** | |
| **For Onshore LDD** | IV-A |
| *Business License and AOA* | |
| *VIE* | |
| *Qualification Certificate* | |
| *Car Rental Contract* | |
| *Cooperation Agreements with Ctrip/China Eastern Airlines* | |
| *Global Affiliation Agreement with Enterprise* | |
| *Technical Consulting Service Contract* | |
| *Contract with the Government* | |
| *Top 20 Store Details(including Business License & Rental Contract)* | |
| *Loan Contract* | |
| *Loan List* | |
| *Intellectual Property as of Jan. 19, 2018* | |
| *Litigation* | |
| *Approval certificate of eHi, Taihao, and Taide* | |
| *NBA Contract* | |
| *Financial Leasing Contract with Taihao* | |
| *Foreign Debt Contract & Registration* | |
| *Labor Dispatching Agreement* | |
| **For Offshore LDD** | IV-B |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

| | |
|---|---|
| *AoA and CI* | |
| *Minutes of Board Meetings* | |
| *Organizational Chart* | |
| *Directors and Officers* | |
| *Powers of Attorney Granted* | |
| *Register of Members* | |
| *Management Organization Chart* | |
| *Intellectual Property* | |
| *D&O Liability Policies* | |
| *Industry Analysts* | |
| *Acquisition* | |
| *Options* | |
| *Private Placement* | |
| *Loan(offshore)* | |
| *Retainer Agreements with Professionals* | |
| *Brokers' or Finders' Agreements* | |
| *Other Material Contract* | |
| *Related Party Transactions* | |
| *Legal Counsel (Outside)* | |
| *Bank Accounts* | |
| *Disposal of Elite Plus Developments Limited* | |
| *Investment Documents* | |
| *Series E and E+ SPA* | |
| *Crawford Group Inc.-Sale Purchase Agreements* | |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

26

| | |
|---|---|
| *Ctrip Service Agreements* | |
| *Ctrip Loan Agreement* | |
| *Reports and Communications to Stockholders* | |
| *Executive Compensation Agreement* | |
| *Subsidiaries* | |
| *Code of Business Conduct* | |
| *Fees Paid for Ocean Consulting Services Agreement* | |
| *2010 and 2014 Plan Performance Incentive* | |
| *Memorandums of Understanding* | |
| *Registration Rights* | |
| *Chairman's Trust* | |
| *Non-compete* | |
| *Class A Subscription Agreement* | |
| *United States Taxpayers' Options* | |
| *Benefit Plans and Option Agreement Template* | |
| *3th Amended and IRA dated Sep 2, 2010* | |
| *3th Amended and IRA dated Dec 11, 2013* | |
| *Confidentiality Agreements or Terms* | |
| *Executive Employment Agreement* | |
| *Indemnification Agreements* | |
| *Investors' Rights Agreement* | |
| *For Common Share dated Jan.,2010-Series B round Closing Binder* | |
| *For Perferred Share-Series B SPA_* | |
| **Update 1** | IV-C |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

27

| | |
|---|---|
| *Partnership* | |
| *Litigation* | |
| *eHi Cayman-Register of Charges* | |
| *Loan* | |
| **Update 2** | IV-D |
| *New Subsidiaries* | |
| *Store Leasing Contract* | |
| *Labor Dispatching Agreement* | |
| *Options Grant Details Report* | |
| *Register of Members as of March 27, 2018* | |
| *JPM- eHi Registered Shareholder List* | |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

28

## APPENDIX 4

### Categories of documents to be disclosed pursuant to paragraph 8 of the Order

Documents which exist and are within the Company's possession, custody or power between 8 April 2014 and the Valuation Date, which are relevant to the question of the fair value of the Dissenters' shares in the Company as at the Valuation Date and which fall within the following categories:

a.   Communications and documents provided to or obtained from Duff & Phelps or its affiliates (the "**Financial Advisor**") in relation to the fair value opinion, including those passing between the Financial Advisor and:

   i.   The independent directors or Special Committee of the Company;

   ii.   The Company's other directors, management, employees, counsel or advisors; and

   iii.   The Original Buyer Group (as defined in the Proxy Statement) and the Buyer Group (together, the "**Buyer Groups**"); and

   iv.   Any other potential purchasers, including Goliath Advisors Limited, the "affiliate of the MBKP Filing Persons", the "affiliate of the Baring Parties" and the "four financial parties" (as referred to on page 23 of the Background of the Merger section of the Proxy Statement) who considered making or did make proposals in respect of the purchase of shares in the Company ("**Potential Purchasers**" and a "**Potential Purchaser Proposal**"), including the GAL Proposal, the Proposal and the Ocean Link Proposal) as defined in the Background of the Merger section of the Proxy Statement.

b.   Communications, documents and other materials passing between the Special Committee and the Company, or between the Special Committee and the Buyer Groups, in relation to the merger (including communications and documents relating to the Agreement and Plan of Merger dated 6 April 2018).

c.   Communications, documents and other materials passing between the Special Committee and the Company, or between the Special Committee and the Potential Purchasers, in relation to a Potential Purchaser Proposal.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

29

d.   Communications, documents and other materials previously produced by, provided to, or communicated between employees, directors, management or consultants of the Company in the production and calculation of any projections sent to the Financial Advisor and Special Committee and any other sets of projections in existence (including, for the avoidance of doubt, in respect of any Proposal).

e.   Communications, documents and other materials passing between the Company on the one hand and the Buyer Groups or Potential Purchasers on the other, including any communications and documents previously provided to or obtained from the Buyer Groups or former members thereof or other parties who considered or did participate in any offer for the Company as described in the Background of the Merger section of the Proxy Statement (whether provided to or from any of the persons mentioned in (a), (b) or (c) above or passing between such persons), for purposes of undertaking due diligence on the Company or otherwise in relation or a Potential Purchaser Proposal to the merger (including but not limited to all management forecasts provided to the same).

f.   Communications and documents provided to or obtained from Next Commerce Limited ("**NCL**") or its affiliates in relation to advisory services provided beginning November 2017 including those passing between the Company and:

i.    The independent directors;

ii.   The Company's other directors, management, employees, counsel or advisors;

iii.  The Buyer Groups;

iv.   Tiger Global Mauritius Fund ("**TGMF**") and affiliates;

v.    Goliath Advisors Limited ("**GAL**") and affiliates; and

vi.   MBKP (as defined in the Proxy Statement) and affiliates.

g.   Communications, documents, and other materials previously provided to or obtained from the Buyer Groups' financiers or prospective financiers (whether provided to or received from any of the persons mentioned in paragraph (a), (b), (c), or (d) above  or  passing  between  such persons) for the purposes of securing finance for the merger transaction (by way of debt finance

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

30

or equity capital contributions), undertaking due diligence on the Company and/or for negotiating the terms of the Merger (including those concerning price, structure or conditions).

h.   Communications and documents which were provided to or obtained from a Potential Purchaser's financiers or prospective financiers for the purposes of securing finance for a Potential Purchaser Proposal, undertaking due diligence on the Company and/or for negotiating the terms of a Proposal (including those concerning price, structure or conditions).

i.   Communications and documents provided to or obtained from TGMF or its affiliates in relation to TGMF's sale of 5,264,080 eHi ADS to MBKP and Baring disclosed on 9 March 2018.

j.   Communications and documents provided to or obtained from Ignition Growth Capital ("**IGC**") or its affiliates in relation to the sale of ICG Holdco 1, LLC and ICG Holdco 2, LLC to The Crawford Group, Inc. ("**Crawford**"), including those passing between the Company and:

   i.   The independent directors or Special Committee of the Company;

   ii.   The Company's other directors, management, employees, counsel or advisors; and

   iii.   The Buyer Groups.

k.   Communications and documents provided to or obtained from GS Car Rental HK Limited ("**GS Limited**"), GS Car Rental HK Parallel Limited ("**GS Parallel**") or their affiliates in relation to the sale of GS Limited and GS Parallel to Crawford including those passing between the Company and:

   i.   The independent directors or Special Committee of the Company;

   ii.   The Company's other directors, management, employees, counsel or advisors;

   iii.   The Ctrip Filing Persons (as defined in the Proxy Statement);

   iv.   The Ocean Link Filing Persons (as defined in the Proxy Statement); and

   v.   The Buyer Groups.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

31

l.   Minutes and agendas of Board meetings and any supporting documentation and any other reports prepared for Board Meetings.

m.   Monthly management accounts.

n.   Consolidated quarterly accounts.

o.   Monthly and/or quarterly financials including, where available, profit and loss statements, balance sheets, cash flow statements and any accompanying notes, commentary, reports or business plans.

p.   Financial projections, forecasts, models and supporting documentation including source data which were:

    i.   Prepared by or for the Company for internal planning purposes or in relation to the Company's long term plans, including any communications, board minutes or other documents relating to the Company's projections (for the avoidance of doubt including but not limited to those documents and communications previously produced by, provided to, or communicated between, employees of the Company in the production and calculation of the projections sent to the Financial Advisor and any other sets of projections in existence);

    ii.   Exchanged between the Company and the Special Committee and/or the Financial Advisors;

    iii.   Exchanged between the Company and the Buyer Groups; and

    iv.   Exchanged between the Company and a Potential Purchaser.

Such documents to include:

    i.   Internal long-term forecasts, budgets, projections, reports and models including source data and any supporting documentation;

    ii.   External forecasts, budgets, projections, reports and models relating to the Company's long-term plans including any supporting documentation;

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

32

iii.   Any communications, board minutes or other documents relating to the Company's projections (for the avoidance of doubt including but not limited to those documents and communications previously produced by, provided to, or communicated between, employees of the Company in the production and calculation of the projections sent to the Financial Adviser and any other sets of projections in existence;

iv.   Valuations or models of the Company (or any part of it, and whether for financial reporting, tax or investment appraisal purposes or otherwise) prepared by or for the Company, including any accompanying or supporting documentation and documents provided to or obtained from any financial adviser in relation to any such valuation.

q.   Analyst, third party market and industry reports relevant to the markets in which the Company operates.

r.   Internal documents relating to market share and commission broken down by business segment (where available).

s.   Internal documents relating to any other potential acquisition of the Company considered by the Company's management.

t.   Agreements with the Company's major suppliers and any related communications and documentation;

u.   Communications and documents relating to any significant changes to the business or industry-related events having a significant effect on the Company's long term projections.

v.   Documents supporting the values of long-term investment, loans and other receivables and liabilities.

w.   The number and class of shares issued and any changes thereto, and the terms and conditions of any outstanding share options.

x.   Communications and documents relating to potential significant transactions of the Company's shares.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

33

y.   Documentation of any off-balance sheet or non-operating assets and liabilities, including pension liabilities.

z.   Terms and conditions of any outstanding share options.

aa.  Advice or analysis relating to corporation tax, withholding tax or other tax prepared by or for the Company's management.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

34

**Appendix 5**

**Categories of documents to be disclosed pursuant to paragraph 32 of the Order**

Documents/information which exist and are within the Dissenters' possession, custody or power between 27 November 2016 and the Valuation Date, which are relevant to the question of the fair value of the Dissenters' shares in the Company as at the Valuation Date and which fall within the following categories:

1.      All documents reflecting or relating to any valuations or similar analyses of the Company that the Dissenters prepared, reviewed, or considered, including but not limited to:

    a.      All written documents, including Excel files, that set forth, summarise, or otherwise reflect valuation analyses of the Company or Company's shares;

    b.      Any internal valuations of the Company or the Company's shares; and

    c.      Any valuations of the Company or Company stock reviewed or considered by the Dissenters in connection with the above.

2.      A list of any communications that the Dissenters had, whether in writing, electronically or verbally, with any representative of the Company prior to the date of the merger in relation to the value of the Company or its shares.

3.      Confirmation of the date the Dissenters purchased any or all of their shares in the Company, including the method of purchase.

4.      A schedule setting out the history of the Dissenters' trades in the shares of the Company.

5.      All documents, information and material issued or shared between the Dissenters' investment manager and/or investment advisor and the Dissenters' investment committee for their consideration of the Company's go-private transaction including file notes of meetings, meeting agendas and all forms of written communications.

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

35

**Appendix 6**

**Schedule of Dates**

| S/n | Description | Order | Reference | Date |
|-----|-------------|-------|-----------|------|
| 1 | Directions Order (the "**Order**") issued | - | - | 18 Feb 2020 |
| 2 | Company to inform Dissenters of total number of shares subject to the trial of the Petition | 51 | 5 days from filing of Order | To be determined |
| 3 | Each party to appoint their respective Experts and to advise the other parties of the identities and email addresses of the respective Experts appointed | 2, 3 | 30 days from date of Order | 19 March 2020 |
| 4 | Company to enter into a Confidentiality and Non-Disclosure Agreement (Appendix 2) with the Dissenters and their Representatives as well as the Experts and their Appointees | 5 | 14 days from date of Order | 3 March 2020 |
| 5 | Company to open an electronic Data Room | 6 | 14 days from date of Order | 3 March 2020 |
| 6 | Company to upload Transaction Due Diligence documents to Data Room | 7 | 14 days from date of Order | 3 March 2020 |
| 7 | Company to upload Appendix 4 and other documents to Data Room | 8 | 120 days from date of Order | 17 June 2020 |
| 8 | Dissenters to upload Appendix 5 and other documents to Data Room | 32, 33 | 120 days from date of Order | 17 June 2020 |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)

36

| S/n | Description | Order | Reference | Date |
|---|---|---|---|---|
| 9 | Experts may start issuing Information Requests to the Company | 18 | From the date of the upload of documents to Data Room | 17 June 2020 |
| 10 | Service of factual evidence | 35 | 14 days from the date of the upload of documents to the Data Room | 1 July 2020 |
| 11 | Service of evidence in response | 35 | No later than 21 days of service of the Company's factual evidence upon them | 22 July 2020 |
| 12 | Service of evidence in reply | 35 | No later than 14 days of service of the Dissenters' evidence upon it | 5 August 2020 |
| 13 | Cut-off date for final Information Request from Experts to the Company | 21 | 28 days prior to the exchange of Expert Reports | 7 October 2020 |
| 14 | Experts to exchange their respective Reports | 37.3 | 20 weeks from the date of the upload of documents to the Data Room | 4 November 2020 |
| 15 | Experts' Meeting | 38 | Within 21 days of the exchange of Expert Reports | 25 November 2020 |
| 16 | Experts to issue their Joint Memorandum | 39 | Within 21 days of the Experts' Meeting | 16 December 2020 |
| 17 | Experts to exchange their respective Supplemental Reports (if any) | 40 | Within 42 days of the Joint Memorandum | 27 January 2021 |
| 18 | Case Management Conference | 44 | To be determined | To be determined |
|  | Trial | 50 | At least 8 weeks after the exchange of Supplemental Reports and subject to the availability of counsel | To be determined, from 24 March 2021 |

This Directions Order is filed by Maples and Calder, Attorneys-at-Law for the Petitioner, whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. (Ref: CJM/ADH/758132.2/61767265)